Kathleen L. DeSoto
GARLINGTON, LOHN &
ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT 59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
kldesoto@garlington.com

Steven G. Emerson (*pro hac vice*)
Thomas H. Davis (*pro hac vice*)
STINSON LEONARD STREET, LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106-2150
Telephone (816) 842-8600
Telefax (816) 691-3495
steve.emerson@stinson.com
thomas.davis@stinson.com

Attorneys for Defendant/Third-Party
Plaintiff NorthWestern Energy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

EXXON MOBIL CORPORATION,

        Plaintiff,

vs.

NORTHWESTERN CORPORATION
dba NORTHWESTERN ENERGY,

        Defendant/Third-Party Plaintiff

vs.

CITY OF BILLINGS

and

GENERAL ELECTRIC
INTERNATIONAL, INC.

        Third-Party Defendants

Case No. 1:16-cv-00005-SPW-CSO

**NORTHWESTERN ENERGY'S
RESPONSE IN OPPOSITION TO
CITY OF BILLINGS' MOTION TO
DISMISS FIRST AMENDED
THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

APPLICABLE LEGAL STANDARDS ...................................................3

   I.   RULE 12(b)(6)'S GENERAL STANDARD OF REVIEW ............................3

   II.   THE STANDARD OF REVIEW UNDER RULE 12(b)(6) THAT IS
APPLIED TO A THIRD-PARTY COMPLAINT IS THE SAME STANDARD
AS IS APPLIED TO A COMPLAINT...............................................................4

STATEMENT OF FACTS .....................................................................6

   I.   NORTHWESTERN ENERGY'S DENIALS OF THE ALLEGATIONS IN
EXXONMOBIL'S COMPLAINT MUST BE DEEMED AS TRUE FOR THE
PURPOSE OF EVALUATING NORTHWESTERN ENERGY'S FIRST
AMENDED THIRD-PARTY COMPLAINT ........................................................6

   II.   NORTHWESTERN ENERGY'S ALLEGATIONS AGAINST THE CITY
MUST BE DEEMED TO BE TRUE.................................................................8

   III.   ONE OF GE'S KEY UNSUPPORTED FACTUAL ASSERTIONS HAS
BEEN REBUTTED BY THE CITY'S THUNDERING SILENCE ...................12

ARGUMENT AND AUTHORITIES...................................................14

   I.   COUNT I OF NORTHWESTERN ENERGY'S FIRST AMENDED THIRD-
PARTY COMPLAINT SUFFICIENTLY PLEADS THE FACTS AND
ELEMENTS SUPPORTING ITS CLAIM FOR CONTRIBUTION OR
APPORTIONMENT OF FAULT UNDER MONT. CODE ANN. § 27-1-703. .14

   II.   COUNT III OF NORTHWESTERN ENERGY'S FIRST AMENDED
THIRD-PARTY COMPLAINT AGAINST THE CITY SUFFICIENTLY
PLEADS THE FACTS AND ELEMENTS SUPPORTING ITS CLAIM
AGAINST GE FOR BREACH OF CONTRACT/TARIFF................................18

CONCLUSION ...................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*,
  524 U.S. 214 (1998)..................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................4

*Barnard-Curtiss Co. v. Maehl*,
  117 F.2d 7 (9th Cir. 1941) ..........................................................................5

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007).....................................................................................4

*In re Blixseth*,
  Bankruptcy No. 09-60452-7, 2011 WL 61197 (Bankr. D. Mont.
  Jan. 4, 2011)................................................................................................6

*State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*,
  935 F.2d 1469 (7th Cir. 1991) ...................................................................18

*Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*,
  No. CV-03-150-BLG-RFC, 2006 WL 6843711 (D. Mont. Oct. 30,
  2006) ........................................................................................................3, 6

*In re Dep't of Energy Stripper Well Exemption Litig.*,
  752 F. Supp. 1534 (D. Kan. 1990)...............................................................5

*Eklund v. Trost*,
  2006 MT 333, 335 Mont. 112, 151 P.3d 870 .......................................15, 16, 17

*Foote v. United States*,
  648 F. Supp. 735 (N.D. Ill. 1986).................................................................5

*Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*,
  976 F.2d 1338 (9th Cir. 1992) ...................................................................5, 6

*Kearns v. McIntyre Const. Co.*,
　　173 Mont. 239, 567 P.2d 433 (1977)...................................................................20

*Maier v. Mavrinac*,
　　No. CV 08-26-H-DWM-RKS, 2008 WL 4838419 (D. Mont. Oct.
　　30, 2008) ..............................................................................................................3

*Medco Energi US, L.L.C. v. Sea Robin Pipeline Co.*,
　　729 F.3d 394 (5th Cir. 2013) (per curiam) ........................................................18

*Ocasek v. Hegglund*,
　　673 F. Supp. 1084 (D. Wyo. 1987).......................................................................5

*Peschel v. City of Missoula*,
　　No. CV 08-79-M-JCL, 2009 WL 902438 (D. Mont. Mar. 27, 2009) .............3, 4

*Royal Indem. Co. v. Colmore*,
　　No. CV 05-122-BLG-RWA, 2006 WL 2382465 (D. Mont. July 14,
　　2006) ....................................................................................................................6

*Smith v. Whitmore*,
　　270 F.2d 741 (3d Cir. 1959) .................................................................................5

*Tanner v. Heise*,
　　879 F.2d 572 (9th Cir. 1989) ................................................................................3

*Thelen v. City of Billings*,
　　238 Mont. 82, 776 P.2d 520 (1989)...............................................................16, 17

*Tiesler v. Martin Paint Stores, Inc.*,
　　76 F.R.D. 640 (E.D. Pa. 1977)..............................................................................5

**Statutes**

Mont. Code Ann. § 27-1-107 ........................................................................14, 15

Mont. Code Ann. § 27-1-107(4) ............................................................................15

Mont. Code Ann. § 27-1-703.................................................................11, 14, 18

**Other Authorities**

6 C. Wright, A. Miller et al., Fed. Practice & Proc. Civ. § 1455 (3d ed.
　　2016) .....................................................................................................................5

Local Rule 7.1(d)(2)...........................................................................................21

F.R.C.P. 8(a)(2)................................................................................................11

F.R.C.P. Rule 12(b)(6)..............................................................................2, 3, 4, 5, 6

F.R.C.P. Rule 14 .......................................................................................4, 5, 6

COMES NOW Defendant/Third-Party Plaintiff NorthWestern Corporation d/b/a NorthWestern Energy ("NorthWestern Energy" or "NWE") and hereby respectfully submits its Response in Opposition to the Third-Party Defendant City of Billings' ("the City") Motion to Dismiss (Doc. 49).

## **INTRODUCTION**

This lawsuit arises from two electrical power outages that occurred at the Plaintiff Exxon Mobil Corporation's (ExxonMobil) refinery in Billings, Montana, on January 25, 2014 and January 13, 2016.   ExxonMobil's First Amended Complaint alleges that the outages occurred after NorthWestern Energy's 50kV lines serving the refinery were impacted by "actions within the [the City's] Sewer Plant and/or other facilities".  (Doc. 26, para. 36).

In its First Amended Third-Party Complaint against the City, NorthWestern Energy alleges that the first electrical outage at the Exxon refinery was caused by a City employee who negligently transferred an electrical fault on the City's sewer plant electrical system from one of NorthWestern Energy's 50kV lines to the other 50kV line.

NorthWestern Energy's First Amended Third-Party Complaint also alleges that the second electrical outage at the Exxon refinery was caused by a cascade of events set in motion when a General Electric ("GE") technician - in the presence of and with the permission of City personnel – negligently worked on energized

electrical equipment at the City's sewer plant, contrary to the City and GE's promise to NorthWestern Energy that they would not do so.  (Doc. 33, paras. 10, 11, 12, 18).

NorthWestern Energy, accordingly, seeks contribution from or apportionment of fault against the City and GE for their negligence and breaches of contract that caused or contributed to cause ExxonMobil's alleged damages arising from the outages.  (Doc. 33, paras. 17-19, 24-26).

GE filed a Motion to Dismiss NorthWestern Energy's First Amended Third-Party Complaint against it under Rule 12(b)(6) (Doc. 45), supported by a Memorandum in Support (Doc. 46) claiming that the Third-Party Complaint failed to state a claim upon which relief can be granted.  That motion has been fully briefed and is pending before the Court.

The City has now filed a substantively identical Motion to Dismiss (Doc. 49), supported by a Memorandum in Support (Doc. 50) that incorporates whole sections of GE's Memorandum in Support *verbatim* in order to reargue all but one of GE's contentions.  The City's repetition, however, has not improved GE's arguments.  Instead, it emphasizes the legal and logical errors that pervade the arguments that GE first advanced.  Both Motions to Dismiss should be denied.

## <u>APPLICABLE LEGAL STANDARDS</u>

I.    RULE 12(b)(6)'S GENERAL STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss and successfully state a claim upon which relief can be granted, a party's complaint "need only set forth a short and plain statement of claim" showing that the party is entitled to relief.  *Peschel v. City of Missoula*, No. CV 08-79-M-JCL, 2009 WL 902438, at *1 (D. Mont. Mar. 27, 2009).  *Peschel*, 2009 WL 902438, at *1.

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is appropriate only where "it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle [it] to relief."  *Colstrip Energy Ltd. P'ship v. Thomason Mech. Corp.*, No. CV-03-150-BLG-RFC, 2006 WL 6843711, at *1 (D. Mont. Oct. 30, 2006) (citing *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

In evaluating the complaint, the Court must accept as true all factual allegations in the complaint and must construe the complaint "in the light most favorable to the nonmoving party."  *Peschel*, 2009 WL 902438, at *1 (citing *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976) and *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  Additionally, the Court's review is limited to the contents of the complaint itself.  *Maier v. Mavrinac*, No. CV 08-26-H-DWM-RKS, 2008 WL 4838419, at *2 (D. Mont. Oct. 30, 2008) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994)).

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the Supreme Court emphasized that a complaint state "enough factual matter" to make the claim "plausible." *Twombly* at 545. The Court subsequently held that there is no "probability requirement" at the initial pleading stage and, instead, that only "facial plausibility" is necessary to overcome a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Id.* at 570. The only facts needed in a "facially plausible" complaint are those that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (explaining that facial plausibility is a lower, less strict standard than probability).

Accordingly, it is not necessary for a complaint to contain "[d]etailed factual allegations". (*Peschel*, 2009 WL 902438, at *1). Instead, it is sufficient to plead facts that merely "raise a reasonable expectation that discovery will reveal evidence" of the defendant's misconduct. *Twombly* at 556.

## II.   THE STANDARD OF REVIEW UNDER RULE 12(b)(6) THAT IS APPLIED TO A THIRD-PARTY COMPLAINT IS THE SAME STANDARD AS IS APPLIED TO A COMPLAINT

Contrary to the City and GE's argument, third-party complaints are not judged against a special or heightened standard under Rule 12(b)(6).[1] "In general,

---

[1] The City and GE fail to cite any cases that support their contention that additional requirements exist for a third party complaint to survive a Rule 12(b)(6) motion. In fact, GE cites only one case that even discusses the requirements of Rule 14 in

the same principles governing the disposition of a 12(b)(6) motion apply whether the plaintiff's original complaint or a third-party complaint is involved." *Foote v. United States*, 648 F. Supp. 735, 736 (N.D. Ill. 1986).  Where, as here, a third-party defendant moves to dismiss a third-party complaint pursuant to Rule 12(b)(6) on the grounds that the complaint fails to state a claim upon which relief may be granted, "the complaint will be dismissed *only* if it does not meet the . . .  standard" applied to complaints.  6 C. Wright, A. Miller et al., Fed. Practice & Proc. Civ. § 1455 (3d ed. 2016) (emphasis added).

Both the Ninth Circuit Court of Appeals and the District of Montana have recognized that the Rule 12(b)(6) standard of review applied to a complaint also applies to a third-party complaint.  For example, in *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338 (9th Cir. 1992), the Court reversed the

---

conjunction with a Rule 12(b)(6) motion.  In *In re Dep't of Energy Stripper Well Exemption Litig.*, 752 F. Supp. 1534 (D. Kan. 1990), the Court analyzed the third party complaint under Rule 14 because the third party defendant asserted improper joinder as a ground for dismissal, separate from failure to state a claim.  *Id.* at 1536-37 (analyzing the issues of joinder and failure to state a claim separately).

The remaining cases that GE and the City cite do not even discuss 12(b)(6) motions.  In *Tiesler v. Martin Paint Stores, Inc.*, 76 F.R.D. 640 (E.D. Pa. 1977), the third party defendant moved to dismiss the third party claim on grounds unrelated to failure to state a claim.  *Id.* at 643.  The other cases cited by GE do not even involve motions to dismiss.  *See Barnard-Curtiss Co. v. Maehl*, 117 F.2d 7, 9 (9th Cir. 1941) (discussing Rule 14 on appeal after the jury rendered a verdict); *Smith v. Whitmore*, 270 F.2d 741, 743 (3d Cir. 1959) (discussing Rule 14 on appeal after the jury rendered a verdict); *Ocasek v. Hegglund*, 673 F. Supp. 1084, 1087-88 (D. Wyo. 1987) (denying defendant's request for leave to assert a third party claim).

lower court's dismissal of the defendant's third-party complaint for failure to state a claim upon which relief could be granted. The Ninth Circuit applied the Rule 12(b)(6) standard of review and did not discuss Rule 14. *Id.* at 1339-40.

Similarly, in *Colstrip Energy*, the Court analyzed a motion to dismiss a third-party complaint for failure to state a claim under Rule 12(b)(6) with no mention of Rule 14. 2006 WL 6843711, at *1-2. In *Royal Indem. Co. v. Colmore*, No. CV 05-122-BLG-RWA, 2006 WL 2382465 (D. Mont. July 14, 2006), the Rule 12(b)(6) standard of review was applied to a motion to dismiss a third-party complaint for failure to state a claim, with no mention of Rule 14. *Id.* at *2-3. Finally, in *In re Blixseth*, Bankruptcy No. 09-60452-7, 2011 WL 61197 (Bankr. D. Mont. Jan. 4, 2011), the Court used the Rule 12(b)(6) standard of review to analyze a motion to dismiss a third-party complaint for failure to state a claim and did not mention Rule 14. *Id.* at *3.

## STATEMENT OF FACTS

I.   NORTHWESTERN ENERGY'S DENIALS OF THE ALLEGATIONS IN EXXONMOBIL'S COMPLAINT MUST BE DEEMED AS TRUE FOR THE PURPOSE OF EVALUATING NORTHWESTERN ENERGY'S FIRST AMENDED THIRD-PARTY COMPLAINT

The City, like GE, spends the first several pages of its Memorandum in Support (Doc. 50) discussing the allegations in the ExxonMobil's First Amended Complaint, then – like GE - treats ExxonMobil's allegations as if they were established facts in the remainder of its brief.

For example, ExxonMobil alleges that NorthWestern Energy "failed to act reasonably in the design, construction, installation, management, maintenance, inspection, and operation of its equipment and facilities."  (Doc. 26, ¶ 5.)   Both GE and the City then argue that if those allegation are true, then they cannot be liable because ExxonMobil's gripe is with NorthWestern Energy, not with them. (GE Memo (Doc. 46), pp. 19- 21, City Memo (Doc. 50), pp. 15-18.)  In effect, GE and the City are making the rather bold argument that they have been released and immunized by ExxonMobil because they were not named in ExxonMobil's First Amended Complaint.  If this were the case, there would be few cases in which a third-party complaint would ever be viable.

In fact, NorthWestern Energy's First Amended Third-Party Complaint denies these and most of the other operative allegations in ExxonMobil's Complaint.[2]   Consequently, what must be deemed true for the purpose of evaluating NorthWestern Energy's First Amended Third-Party Complaint are NorthWestern Energy's **denials** of ExxonMobil's allegations.  In other words, NorthWestern Energy denies that it was negligent and alleges that the outages were

---

[2] E.g., "Defendant [NorthWestern Energy] incorporates herein the allegations contained in Plaintiff's First Amended Complaint **without admitting to the truth thereof**, except to the extent admitted in Defendant's Answer . . . [and] **Defendant has denied the liability allegations** in Plaintiff's First Amended Complaint against it and continues to do the same  . . ." (Doc. 33, paras. 1 and 15)(emphasis added).

instead caused by the negligence and/or contract and tariff breaches by GE and the City.

## II. NORTHWESTERN ENERGY'S ALLEGATIONS AGAINST THE CITY MUST BE DEEMED TO BE TRUE

Furthermore, the affirmative allegations in NorthWestern Energy's First Amended Third-Party Complaint against the City (Doc. 33) are deemed to be true in order to evaluate the City's Motion to Dismiss. Those allegations include the following:

- On January 25, 2014, an electrical fault on an underground electrical distribution line belonging to and maintained by the City at the City Wastewater Treatment Plant initiated a series of events that caused protective devices on NWE's system to de-energize one of the two 50kV electric lines serving both the Wastewater Treatment Plant and the ExxonMobil Refinery. (Doc. 33, Para. 8).

- Shortly after the first 50kV electric line had been de-energized, a City employee – acting in the course and scope of his employment by the City - closed a "tie breaker" on the City's electrical system, which had the effect of transferring the fault on the City's electrical distribution line to the second 50kV electric line serving both the Wastewater Treatment Plant and the ExxonMobil Refinery. (Doc. 33, Para. 9).

- Sensing that fault, protective devices on NWE's system de-energized the second 50kV line, resulting in outages of both 50kV lines providing electrical service to the Exxon Refinery. (Doc. 33, Para. 9).

- On January 13, 2016, the City of Billings and GE were testing electrical equipment belonging to the City at the Wastewater Treatment Plant. (Doc. 33, Para. 10).

- GE and the City of Billings had represented and promised to NWE that they would conduct their testing and work exclusively on de-energized equipment. (Doc. 33, Para. 10).

- Contrary to that representation and promise, the GE technician, with the knowledge and consent of a City employee, improperly opened an energized potential transformer drawer, which thereby induced an electrical fluctuation on electrical lines at the Wastewater Treatment Plant that caused a high speed ground fault switch to open.  (Doc. 33, Para. 11).

- Sensing the ground fault, protective devices on the NWE system opened breakers on both 50kV electric lines serving the Wastewater Treatment Plant and the ExxonMobil Refinery, resulting in an electrical outage at the Refinery.  (Doc. 33, Para. 12).

- The [carelessness and negligence of] employees and agents of the City acting in the course and scope of their employment, caused or contributed to cause Plaintiff's damages as follows:

    a.   Improperly maintaining the electrical wires and associated equipment belonging to the City of Billings at the City sewer plant;

    b.   Improperly manipulating and testing the electrical wires and associated equipment belonging to the City of Billings at the City sewer plant while in an energized state;

    c.   Improperly training its workmen, employees, agents and subcontractors with respect to making and ensuring that electrical testing was being conducted with due care and according to mandated protocols and/or recognized standards;

    d.   Improperly supervising its workmen, employees, agents and subcontractors to ensure proper and safe electrical connections were made and testing not be done in a manner to cause an electrical fault on the system;

    e.   Improperly inspecting its work and the work of its workmen, employees, agents and subcontractors such that improper and unsafe electrical testing and connections were made; and/or

9

> f.   Improperly closing the tie breaker on January 25, 2014, without consulting the Defendant and/or verifying the source of the electrical fault.

(Doc. 33, Para. 15).

- NWE distributes electric power to the City pursuant to the Montana Public Service Commission approved Electric Tariff ("Tariff") which imposes certain obligations and conditions on the City.  (Doc. 33, Para. 21).

- Among the obligations imposed on the City by the Tariff as a "Customer" of NWE are those contained in Rule 7, as follows:

> 7-2  Customer's Responsibility - Customer shall be responsible for the electrical installation, appliances, apparatus, and equipment on Customer's side of the point of delivery, and for the electric power and energy after it passes said point of delivery.  Customer shall also be responsible for providing any permits required by governmental agencies.

> 7-3  Changes in Installation - Customer shall notify the Utility of any proposed changes or increases in the installation which might overload or adversely affect the Utility's facilities.  If Customer desires to exceed the maximum demand specified in Customer's currently effective service agreement, a new service agreement with the Utility shall be executed.

> 7-7   Load Balance - Customer shall maintain a reasonable electrical balance of load between wires of phases.

> 7-10  <u>Customer Owned Lines and Facilities</u>

>> A.   Utility shall have no responsibility for operation or maintenance of any lines or facilities which it does not own; but the Utility may discontinue service to any such lines or facilities, or portion thereof if, in the opinion of the Utility, such lines or facilities, or portion thereof, are in a dangerous condition or may interfere with the Utility's operations. However, the Utility shall have no duty or obligation to inspect any such lines or facilities.

B. The Utility may require such lines or facilities to be placed in condition conforming with its specifications and the standards of good practice for similar lines or facilities before furnishing or restoring service to any such lines or facilities.

(Doc. 33, Para. 22)

- The City is entirely responsible and must indemnify Defendant and/or is jointly and severally liable to Plaintiff because the City is responsible for the electrical installation, appliances, apparatus and equipment on its side of the point of delivery and breached its obligations under the Tariff by failing to operate and maintain its equipment in such a fashion as to not overload or adversely affect Defendant's facilities, causing the outages in question.  (Doc. 33, Para. 23).

- GE assumed the City's responsibility for the electrical installation, appliances, apparatus and equipment on the City's side of the point of delivery and breached its obligations assumed under the Tariff by failing to operate and maintain the City equipment in such a fashion as to not overload or adversely affect Defendant's facilities, causing the 2016 outage in question.  (Doc. 33, Para. 26).

Rule 8(a)(2) requires a pleading that states a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief". The foregoing allegations contained in NorthWestern Energy's contribution and apportionment of fault claims against the City and GE under Mont. Code Ann. § 27-1-703 exceed the requirements set forth in Rule 8(a)(2).

For example, NorthWestern Energy pled that the City's negligence in closing the "tie breaker" lead to the first outage.  NorthWestern also pled that GE and the City specifically agreed not to work on energized equipment and that they both were negligent and breached their promises when they opened an energized

potential transformer drawer that directly led to the second outage.  These facts alone – deemed to be true at this stage of the proceeding - support NorthWestern Energy's claims against both third-party defendants.

The City, like GE, ignores those and other allegations and instead raises a number of straw man arguments that NorthWestern Energy's First Amended Third-Party Complaint is defective because it does not allege irrelevant facts, such as that the City helped design NorthWestern Energy's 50kV system.  (Doc. 50, p. 18). The City and GE have cited no cases whatsoever suggesting that their liability must be predicated on helping design the distribution system and, in any event, such evidentiary detail would not be required to support a legal claim for breach of contract or negligence.

## III.   ONE OF GE'S KEY UNSUPPORTED FACTUAL ASSERTIONS HAS BEEN REBUTTED BY THE CITY'S THUNDERING SILENCE

GE injected a number of unsupported factual issues into its argument and then doubled down on these unsupported "facts" in its Reply Memorandum.  (Doc. 48).  Most notably, GE unmistakably and repeatedly suggested to the Court that there was no agreement between GE and the City under which GE expressly or impliedly agreed to assume any of the City's contractual or tariff obligations to NorthWestern.  (Doc. 46, p. 7, Doc.  48, p. 7).

GE suggested this to support its argument that regardless of the damage its actions did to NorthWestern Energy's electrical system (and, hence, to the ExxonMobil refinery), it cannot be liable because it was not bound to any written contract that expressly prohibited it from interfering with NorthWestern Energy's system.

The Court should view GE's argument with great skepticism. If, in fact, no such contract exists, GE would surely have supported that assertion by submitting an affidavit or other competent evidence to that effect. Its failure to do so is telling and absent such evidence, GE's suggestion that no such contract exists should be disregarded.

In stark contrast to GE's suggestions, the City's Memorandum in Support of its Motion to Dismiss (Doc. 50) is conspicuously silent about the existence or terms of the contract between the City and GE. Like Sherlock Holmes' observation about the watchdog that did not bark, the City's failure to address the topic of its contract with GE – after incorporating all of GE's other arguments – strongly implies that there indeed was a contract. The parties Initial Disclosures will, of course, answer the question of whether a contract exists between the City and GE.

Even setting aside the issue of whether a contract exists and the terms of that contract, GE's assertion that it owed no duties to ExxonMobil or to NorthWestern Energy is wrong on multiple counts. First, NorthWestern Energy's Third-Party

Complaint alleges that GE and the City specifically promised to NorthWestern Energy that they would not do work on energized equipment, and that their breach of that agreement was a proximate cause of the second outage. (Doc. 33, paras. 10, 11, 12, 18(a)-(d)). Second, the Third-Party Complaint identifies the specific tariff provisions that GE had impliedly (if not explicitly) agreed to assume in conducting its work, but which were breached. (Doc. 33, para. 25). Third, tort liability rarely requires the presence of a contract prohibiting the tortious conduct and GE, at a minimum, had a duty to act non-negligently, as pled in the Third-Party Complaint.

## **ARGUMENT AND AUTHORITIES**

I.   COUNT I OF NORTHWESTERN ENERGY'S FIRST AMENDED THIRD-PARTY COMPLAINT SUFFICIENTLY PLEADS THE FACTS AND ELEMENTS SUPPORTING ITS CLAIM FOR CONTRIBUTION OR APPORTIONMENT OF FAULT UNDER MONT. CODE ANN. § 27-1-703.

Count I of NorthWestern Energy's First Amended Third-Party Complaint asserts a claim against the City for contribution and/or apportionment of fault under Mont. Code Ann. § 27-1-107, which states in relevant part that:

> (4) On motion of a party against whom a claim is asserted for negligence resulting in death or injury to person or property, any other person whose negligence may have contributed as a proximate cause to the injury complained of may be joined as an additional party to the action. For purposes of determining the percentage of liability attributable to each party whose action contributed to the injury complained of, the trier of fact shall consider the negligence of the claimant, injured person, defendants, and third-party defendants.

The City tacitly concedes that NorthWestern Energy has adequately pleaded adequate facts and elements supporting this cause of action.  Nonetheless, the City has asked the Court at this early stage to find that its negligent conduct in causing the electrical faults in the first place cannot be a proximate cause as a matter of law.[3]

The issue of proximate cause, as expressly indicated in Mont. Code Ann. § 27-1-107(4), is almost always for the "trier of fact" (i.e., the jury here) to decide and neither the City nor GE cite any cases deciding the issue of proximate cause as a matter of law on a motion to dismiss.  Instead, the very authorities they cite confirm that their challenge regarding the issue of causation at this stage is premature and must be denied.

For example, the City, like GE, cites the case of *Eklund v. Trost*, 2006 MT 333, 335 Mont. 112, 151 P.3d 870 in support of its argument that its conduct did not foreseeably and substantially cause the second outage.  In that case, however, the Montana Supreme Court **reversed** the trial court's summary judgment in favor of the defendant on the issue of causation and sent the case back to the trial court

---

[3] NorthWestern is not attempting to "transfer" its "contract liability" in Count I, as suggested by the City (Doc. 50, p. 19).  ExxonMobil has asserted a claim for negligence against NorthWestern and Count I of NorthWestern Energy's First Amended Third-Party Complaint pleads that if that is determined to be true, then the City was also negligent in causing the second outage and therefore owes contribution due to its apportioned fault under Mont. Code Ann. § 27-1-107.

because "foreseeability does not require that a particular accident or particular victim need have been foreseen." *Id.* ¶ 41. "'Only when reasonable minds could reach but one conclusion' may the question of foreseeability for the purposes of causation be determined as a matter of law." *Id.* ¶ 46 (citing *Lopez v. Great Falls Pre-Release Servs.*, 1999 MT 199, ¶ 31, 295 Mont. 416, 986 P.2d 1081)). In other words, the question of foreseeability and causation is almost always for the jury to decide.

NorthWestern Energy has pleaded that the City and GE agreed and represented to NorthWestern Energy that they would not do work on energized equipment. The obvious reason for this pre-condition was that work on energized equipment could foreseeably lead to electrical incidents that would adversely impact the integrated electrical system. The City and GE need not have foreseen that their actions would lead to a specific outcome (*i.e.*, the power outages at the Refinery), only that creating an anomaly in an energized system could result in adverse consequences elsewhere in the system.

The City's reliance on *Thelen v. City of Billings*, 238 Mont. 82, 776 P.2d 520 (1989) is similarly misplaced. *Thelen* involved claims that the defendants, City of Billings and its contractors, caused the plaintiffs' basements to become flooded by doing improper work on a sewer project. Defendants moved for summary judgment, and the burden shifted to plaintiffs to come forward with evidence to

16

demonstrate a genuine issue of fact.   However, plaintiffs only provided a preliminary hydrologist's report saying that the increased water flow from sewer project irrigation ditch "could have" caused the flooding and that the excavation of a sewer trench "could have" caused or contributed to the flooding.   The Court determined that this opinion was speculative and that therefore "…failed to raise a material fact on the question of proximate cause." *Id.* at 88, 776 P.2d at 524.

*Thelen* involved a motion for summary judgment in which the opponent of the motion failed to tender sufficient evidence to demonstrate the existence of a genuine issue of material fact.   In contrast, the well-pled allegations of a party are deemed true in the face of a motion to dismiss.   As described above, NorthWestern Energy's Third-Party Complaint meets that standard.

The City and GE's real proximate cause argument is that the design of NorthWestern Energy's electrical distribution system was a superseding cause of the outage because it should have prevented the electrical fault negligently caused by GE and the City from setting off a cascading sequence of events.   A claim of superseding cause, however, is an affirmative defense that the City and GE must plead and prove to a jury.   As stated in *Eklund*, *supra*, where "reasonable minds might reach different conclusions as to whether [NorthWestern Energy's] actions were unforeseeable intervening superseding causes of [ExxonMobil's] injuries, . . .the issue is appropriately adjudicated by a jury." *Eklund*, ¶ 46.

Moreover, the City and GE would not automatically be relieved of responsibility for negligently causing the electrical faults in the first place even if the jury were to find that NorthWestern Energy was also negligent.  For example, under Montana Pattern Jury Instruction (MPI) 2.10 Negligence – Multiple Causation, the jury will be instructed that "More than one person may be liable for causing an injury.  A defendant may not avoid liability by claiming that some other person helped cause the injury."  The desirability of adjudicating in one proceeding the relative fault of joint tortfeasors whose conduct has combined to cause damages is, of course, the underlying purpose of a claim for contribution under Mont. Code Ann. § 27-1-703.

II.   COUNT III OF NORTHWESTERN ENERGY'S FIRST AMENDED THIRD-PARTY COMPLAINT AGAINST THE CITY SUFFICIENTLY PLEADS THE FACTS AND ELEMENTS SUPPORTING ITS CLAIM AGAINST THE CITY FOR BREACH OF CONTRACT/TARIFF

In stark contrast to GE's argument, the City of Billings tacitly concedes that it was bound to comply with the relevant provisions of the Electric Tariff.[4]  The

---

[4] The United States Supreme Court has held that filed tariffs have the force of a contract and govern the rights and liabilities between a utility and its customers. *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 226-27 (1998). Similarly, in *Medco Energi US, L.L.C. v. Sea Robin Pipeline Co.*, 729 F.3d 394 (5th Cir. 2013) (per curiam), the Fifth Circuit applied the terms and conditions set out in the tariff to define a natural gas transporter's obligations to its customers and the customer's rights thereunder.  In *State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469 (7th Cir. 1991), the court treated a FERC-approved G tariff rate schedule, which provided for an exclusive dealing contract between the defendant and its customers, as a contract.  In holding that the defendant did

City, suggests that the tariff provisions were not adequately pled, but the argument quickly devolves to a repeat of the argument about proximate cause.

That tariff contains provisions that apply directly to the conduct alleged in NorthWestern Energy's Third-Party Complaint against the City.  For example, in addition to the general obligations not to not adversely affect or overload the system, NorthWestern Energy has pleaded Tariff Section 7-10.B, which provides that NorthWestern Energy "may require such lines or facilities [of the Customer] to be placed in condition conforming with its specifications . . . "  NorthWestern Energy has also pled that one of its express specifications was that the City and GE's work and testing be done only on de-energized equipment (i.e., that the City and GE put the equipment in a de-energized condition before working on it). NorthWestern Energy further alleges that the City and GE deliberately violated that specification when the GE technician pulled open the energized potential transformer drawer in the presence of and with the consent of City personnel.

In this case, the Montana Electric Tariff provisions pleaded by NorthWestern Energy impose obligations on the customer, in this case the City, to not adversely affect the integrated electrical system.  The City and its contractor, GE, being cognizant of those obligations, promised NorthWestern Energy that they

---

not violate antitrust laws, the Court explained that the obligations the defendant and its customers assumed under a G tariff rate schedule were "legitimate contracts designed to allocate the risk between [the defendant] and its customers."  *Id.* at 1483-84.

would not work on or test energized equipment, then broke that promise when they opened the energized potential transformer drawer.  This breach led directly to the second outage at the Refinery.

The Montana Supreme Court has held that when two parties concurrently breach contracts and cause damage to a third party, the two breaching parties are jointly liable for the damages caused to the third party.  *Kearns v. McIntyre Const. Co.*, 173 Mont. 239, 567 P.2d 433 (1977).

NorthWestern Energy has alleged amply sufficient facts to support the allegations that the City had obligations under the Tariff to not take actions which would adversely affect the integrated electrical system and that the City and GE both violated those obligations.

ExxonMobil has also invoked various provisions of the same Montana Electric Tariff in its allegations against NorthWestern Energy.  Thus, if the jury decides that the City, GE and NorthWestern Energy breached the respective Tariff/contract obligations in some way, the jury may well also decide that the City and GE are jointly liable for Plaintiff's alleged damages.

## CONCLUSION

For the foregoing reasons, NorthWestern Energy respectfully prays that the Court deny the City's Motion to Dismiss, and for such other and further relief as the Court deems just and proper.

Dated this 15th day of July, 2016,

By: */s/  Steven G. Emerson*
*Attorney for Defendant/Third-Party Plaintiff*
*NorthWestern Energy*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), the undersigned hereby certifies that this Response contains 5,115 words calculated by Microsoft Word 2010, excluding the caption, certificates of compliance and service, and tables of contents and authorities.  The undersigned also certifies that the Response is typewritten and double spaced in at least 14-point font.

By: */s/   Steven G. Emerson*
*Attorney for Defendant/Third-Party*
*Plaintiff  NorthWestern Energy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2016, a copy of the foregoing **Response in Opposition to City of Billings' Motion to Dismiss NorthWestern Energy's First Amended Third-Party Complaint** was filed electronically with

21

the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

/s/   Steven G. Emerson

*Attorney for Defendant/Third-Party*
*Plaintiff NorthWestern Energy*

22